Mr. Chenowski, you may proceed. Good afternoon, your honor. May it please the court. I am Kevin Chenowski. I represent the plaintiff's appellant, people of the state of Illinois and the city of McHenry in this case. We are raising one issue on appeal in this case, and that is whether the trial court erred by granting the defendant's motion to suppress based upon its findings that the police officer failed to establish substantial compliance with the 20-minute observation period requirement of section 1286.310 of the Illinois Administrative Code. The heart of the issue in the trial court in this case was whether the defendant's statement regarding what had occurred when the police officer was out of the room during the observation period in one instance, and the audio and video recording of the defendant on both occasions when the arresting officer was out of the booking room, was sufficient to establish substantial compliance with the 20-minute observation requirement of the Administrative Code. As I just mentioned, Officer Matthew Schmidt of the McHenry Police Department left the booking room on two specific occasions during the 20-minute observation period. First, he left the booking room for approximately two and a half minutes. Now, during this time, the defendant was seated facing the video system, which was up on the wall at a point where it was looking down at the defendant as he sat in the room. The defendant was seated at a stool with his body facing the video recording system. The system at the McHenry Police Department also had audio recording. Both audio and visual recording were functioning during this time. Officer Schmidt left the booking room. Was it loud enough insofar as recording audio to have recorded a belch? Your Honor, I think that the video that was admitted into evidence, both by the plaintiff and the defendant by agreement, establishes that you can hear what was going on in the booking room at that time. You can actually hear... So the answer is yes? Yes, Your Honor. It is true, though, from the video, you can't really see the defendant's mouth during that first time that the officer leaves the room, correct? Correct. His head is down. He speaks from above. You can see the defendant moving around, and I would bring to the Court's attention that the specific regulation requires the defendant to be deprived of alcohol, to be deprived of foreign substances, and to have not vomited. And it's our position that the camera angle shows him do none of those things. I don't think that the camera would need to be set up in a fashion where it would need to be solely fixated on the person. As you can clearly see in the video, he does not attempt to retrieve anything from his pockets. He does not put anything in his mouth. He doesn't have any bodily reaction that would indicate that he is, in fact, vomiting. There's nothing expelled from his mouth, Your Honor. So Officer Schmidt returns to the booking room. The defendant is still seated at the stool where he was when Officer Schmidt left. Officer Schmidt then proceeds to ask the defendant whether he has done anything within the past half hour that would compromise the integrity of the test. That being whether he's consumed, you know, any alcohol, whether he's, you know, done anything that would affect the integrity of the test. And I would bring this to the question. Forget about the video for a minute, but just that first time that he leaves, he leaves for about two and a half minutes or something like that. Correct. And he comes back and then he asks the defendant this question, basically, have you put anything in your mouth or whatever question he asks. Are you arguing that that's substantial compliance? I'm going to tell police officers out there now who are doing this 20-minute observation period that you can leave for the whole 20 minutes as long as you just come back and say, hey, did you eat anything or drink anything? I'm glad that you asked that question, Your Honor. And I think that Your Honor is very familiar with a similar fact pattern because Your Honor was in a concurring opinion on People v. Ebert. And Ebert was something similar but not exactly the same as his circumstance. So I would argue that what the officer did in this case is similar to what occurred in Ebert. He tried to cure the, I guess, noncompliance with the regulation by asking the individual if they had done anything that would compromise the integrity of the result. Well, that was done in court. Correct. Ebert testified on rebuttal on a hearing and he, in fact, himself testified that he did nothing. But I think in this particular case it certainly is an admission of statement against interest by the defendant that I think would be sufficient to cure that, I guess, that failure to comply with the regulation. I think, though, also it is different in the sense that you do have the video. Irrespective of the defendant's statement, you have the video in this case that shows. What if then Ebert, when he was asked that question under oath, his response was, I'm sorry, I don't remember. I was too drunk at the time. And I think Ebert is different factually than this case in the sense that, to my recollection, Ebert did not have video and audio recorded. So I think in this case that's how this case is factually different. It's kind of a little bit worn off from Ebert in that sense where we don't have to rely specifically on what the defendant or the subject says. I would state, though, that I think if he were to make that statement, I think that statement would be impeached by the video. What do you think is the reason for this regulation and its requirement for compliance? The Ebert court specifically in its ruling set out the requirement for the observation period in terms of dealing with an issue that doesn't affect science. When a failure to comply with a regulation isn't scientific in nature, a reviewing court can look at that noncompliance and can determine whether that impaired the reliability of the test. In this sense, I think this case is similar to Ebert because there's not an issue of a scientific noncompliance. This is strictly did anything occur while the officer was out of the booking room, not observing the subject. And in Ebert, the court specifically said that the fact that the officer was not in the booking room or not with the subject at the time that they were using the washroom did not really impair the reliability of the test because if the officer had been there, he would have simply seen that nothing had occurred. Whose burden of proof is it to establish that the reliability of the test has not been compromised? So in this particular case, once the defendant raised noncompliance with the regulation, the burden shifted to the state to show compliance with people versus court. Essentially, the foundation for the admission of the breathalyzer test. One of those elements being compliance with the 20-minute observation period. And thus, we've attempted to show substantial compliance through the defendant's own statements and the video recording of the defendant, the audio and visual recording. So is it correct to presume or conclude that as far as you're concerned, the statement made by the defendant and the video recording with audio attached establishes that the integrity or reliability of the test was not compromised? Correct, Your Honor. And there is no other evidence relating to this case? Correct. Nothing was raised by the defendant with respect to the motion to eliminate other than simply the fact that the arresting police officer left the room. He did not raise an issue such as GERD, which has come up in similar cases, did not raise an issue that he had actually put anything in his mouth. It simply was the fact that the officer left the booking room during the observation period. So the bottom line is you would be asking us to find that the 20-minute observation period can be done by a mechanical device or a police officer, basically. That is correct. And I think there is a caveat specifically with the mechanical device. The case law has addressed what constitutes observation under the regulation. As the Court probably is aware, the regulation does not specifically provide a definition of observation. So case law has attempted to interpret what constitutes observation in the context of substantial compliance. Now, the cases have looked at circumstances where the officers have had the individual behind them and they're not exactly facing them. And they've said substantial compliance and observation in that instance can include the officer using their other faculties to, quote-unquote, observe an individual. That being hearing, specifically other cases have looked at an officer using their peripheral vision to observe a subject. What is the burden of proof at the trial court level? With respect to what specific matter? With respect to whether or not the State has established the reliability of the test through some other means other than testimony from a police officer. I would say, Your Honor, that it would be similar to just showing substantial compliance. It would be the discretion of the Court to decide if we would show that. Well, I'm going to the point that the burden of proof at the trial court level is, I think, different than the standard on review. Okay. And so when it comes to a trial court who would have determined or had it determined that the video wasn't sufficient, and on review we were supposed to determine whether that's against the manifest way of the evidence, what do you think the answer should be? Do we affirm the trial court or do we reverse the trial court on the basis that, no, the recording was sufficient? I'm asking and we're asking that this Court reverse the trial court because we believe that the defendant's statement, coupled with the video, clearly established that he did not do anything during that two-and-a-half-minute period where the officer had first left the booking room. Is this a question of mixed question of law and fact? I believe it's a question of law and application of the substantial compliance case law to the facts of this case. Why would we take the defendant's word for it? Because I do. After all, he's intoxicated, correct? I think that's a credibility issue for the finding of fact. But if I find him so credible, shouldn't I find him not guilty of operating a vehicle intoxicated? Your Honor, I'm glad that you asked that question. Good, I'm glad you're going to answer it. When you watch the video, specifically before the officer asks him those questions, he asks the defendant, are you under the influence of alcohol now? The defendant says no. So I think on that basis, the defendant is telling the officer that he's not under the influence of alcohol. He blew like a one-six or something. That is correct. I would argue to the Court, though. He's voiced the legal limit. What he says, again, that's why we don't believe what he says. If he goes to trial and he says I'm not under the influence of alcohol and then blows a one-six, you know the prosecutor is going to be up there arguing. He didn't know what he was talking about. He was clearly under the influence. So the same thing goes for did you put anything in your mouth, eat, drink, whatever. I think that's why watching the video helps the fact finder assess the credibility and the condition of the defendant in this particular case. He's responsive to questioning that the officer is asking him. His responses are appropriate. They're directed at the questions. It doesn't give an indication that he's intoxicated to a level where he's not understanding what the officer is asking him to be able to form a response. We have two different things going on here. We have the cases like Bergman and Shirvalli that talk about substantial compliance. The officer's in the room, line of sight, hearing. And then we have Eber, which the officer, you know, absent for a period of time. Clearly not substantial compliance, although we did talk about substantial compliance in Eber. I understand what we said in Eber. I mean, really it's two different things. We're talking about whether there was substantial compliance or whether there's a reason for excusing noncompliance because it didn't affect the reliability of the test. What do we have here? Do we have substantial compliance or do we have excusing noncompliance? I would argue that at a minimum you have substantial, but I think you can also argue that you could excuse compliance because the video, audio recording, essentially serves as the observation that the officer would have seen the defendant. I mean, you can guess our reluctance to put a case out there that says that the 20-minute observation period may be fulfilled, even if we're just talking about substantial compliance as opposed to compliance by a video. I mean, you know police officers are going to run with that. They're going to click the button and go do a million other things and then come back 20 minutes later and click the button again. Your Honor, from a practical standpoint, I don't think that police officers will do that. I understand the court's concern about that. I think that it could be limited to circumstances such as this where it occurs briefly, momentarily. From a police officer's standpoint. But his point is where do we stop that evolution? Is it two and a half minutes out of 20, that's it? Three minutes is too much? I don't think the case law at this point specifically addresses a time limitation in terms of substantial compliance. The case is dealing specifically with the officer having their back to the subject. I believe one of the cases, the officer actually had his back to the subject for approximately six minutes. And the court was careful there not to set some kind of harder rule. But the officer was in the room. Correct. That's the umbrella here. We would be saying it's okay to leave the room completely. You can't hear him. You're not in the same room with him. No peripheral vision. I can't hear if he burps or regurgitates. I think the caveat in how this case is different is that to the extent that the officer leaves the room and something occurs on the video, the officer is clearly unaware of it, administers the breathalyzer test. It's challenged at a later date. That's the downside of the officer leaving the room is that there's no way to rectify that situation, restart an observation period, correct the problem. So from that standpoint, I don't see it as an issue. It could be raised by the defendant that something occurred. The video in some senses is actually better than the officer being there. It's better than the guy who turns his back on him. Correct. Especially from the belch. Correct. Because it's capturing everything that's occurring, both video, audio, and... Your argument for substantial compliance here is severely undercut by the fact that the officer didn't view the portions of the video before giving him the breathalyzer test. If the officer clicks the button and then walks out of the room for 20 minutes and clicks it again and then gives a breathalyzer test, there is noncompliance. If the officer clicks the button, runs the video for 20 minutes, comes back in, and then sits down and watches the video for 20 minutes, maybe we have substantial compliance. Your Honor, my response to that would be that the regulation is really about the preservation of what occurs during that 20-minute period. And in this particular case, the whole 20-minute observation period is preserved to allow the defendant to challenge the breathalyzer result. So I don't think in this case it would be necessary for the officer to come in, view the video, see if anything occurs. Would it be a prudent thing and would it be the best thing for the officer to do to ensure that nothing has happened to compromise the test? Yes, I agree that it probably would. Because if there's something that compromises it, the officer could then restart an observation period, ensure that nothing happens, and then administer the test. But I don't think that should be fatal to the court allowing this to establish substantial compliance. What happens if the defendant submits into evidence the 20-minute tape and claims that at the 13th minute mark that he belched or he regurgitated or he put a piece of xylitol gum in his mouth and the videotape establishes that, but the police officer says that I watched him for 20 minutes and nothing happened? So if we're going to allow the state to use the videotape, why shouldn't the defendant be allowed to use it? And if it establishes that something happened during those 20 minutes, then the test goes out. Is that consistent logic or not? Your Honor, in this particular case, the defendant actually did admit the video to show that the officer left the booking room on two particular occasions. And I believe that if the video were to show something like that to occur, with respect to burping or regurgitating, those are no longer regurgitating what's taken out of the regulations. It's simply deprived of alcohol, foreign substances, and vomiting. So with respect to the burden shifting, it would be our position that we merely need to show that they did not consume alcohol, were deprived of foreign substances, and did not vomit during the period of time. If there was something that was put in the subject's mouth, it would be the state or the local prosecutor's burden at that point to establish that whatever was put into the mouth would not impair the results of the test. It's commonly come up in cases where I believe there's a case where the individual puts certs in the mouth. A state trooper was called. They rebutted that argument by saying there's nothing in the certs that the individual introduced into their mouth during the observation period that would affect the reliability of the test and substantial compliance. This is a Tillandus case, is it not? The case we... Meaning that there's no appellee present? Correct. And no appellee's brief file? Correct. Are you aware that there are different standards when we review a Tillandus case than when we review a case where there's an appellee's brief file? I am sorry. I was not aware of that. Okay. Because if you were aware of that, I would ask you if you felt that the different standards, one of which may be deemed to be a lesser standard to reverse, might be arguable in this situation. Your Honor, to the extent that a lesser standard would apply, I would ask the Court to apply that standard. Well, it's whether your brief raises prime official error and that is supported by the record. And I think that it does, Your Honor, from the standpoint of the video showing that nothing occurred during those two periods of time where the officer was out of the booking room. Your Honors, with respect to the other requirements of people versus orth, I would just like to briefly touch on the fact that it's our position that Officer Schmidt substantially or fully complied with those other requirements of orth, mainly the fact that the officer testified regarding how he set up the breathalyzer machine to accept the test result, the fact that he instructed the defendant on how to provide that result, that he was a licensed breath alcohol operator on the date in question, a copy of his license was admitted into evidence, and the breathalyzer instrument for the Police Department was tested for accuracy both on May 1st and June 1st of 2017 within the necessary requirements per the regulations. And furthermore, the instrument was a model that was on the approved list of breathalyzer instruments. And the officer identified the results of the instrument as that belonging to the defendant. If there are no further questions, I would ask for support. I do have a question. You know, I started to ask you that before and sort of sidetracked, but if we're going to rely on a device separate and apart from a police officer's observations or audio presence, what should be the requirements of the device or the video audio that is produced? I mean, you know, we've all seen videotapes, cameras in the dashboard that are just, you know, gray shades. So what's enough? I think that would be an issue for the trial court to determine with respect to the quality of it. Is it sufficient? I think that it should have, at a bare minimum, video recording. Video and audio recording would be consistent with what the case law has defined as observation. With respect to the fact that you would be able to hear something if it occurred if you could not necessarily see it, and then also you could see the subject do something that might impair the observation period or might impair the result if you couldn't necessarily hear it. And your position is because the regulations have somewhat relaxed in terms of it's just vomiting, consumption of alcohol, or a foreign substance. Correct. That's much more readily identifiable in a video than perhaps under the old regulations when burping or some type of regurgitation where nothing comes out of your mouth. That is correct, Your Honor. In this case, in this particular video, you can clearly see the defendant's hands not coming up to his mouth, nothing to indicate that he ingested alcohol or he put any foreign substances into his mouth during the observation period. And you don't see any violent physical reaction that would be associated with vomiting. I think that distinction is extremely important. The old regulation had regurgitation, and that's maybe more of a subtle body reaction versus vomiting. In this particular case, there's nothing to suggest that the defendant did that during those two periods of time. Since the trial court suppressed the evidence, if we were to reverse, then we would have to find that the court's findings were against the manifest way of the evidence, would we not? Yes, Your Honor. And it would be based upon the person's statement and the audio-slash-video tape. Your Honor, I would argue that it could be based on both, but I think the video alone establishes that. Any more questions? Thank you. We will take the case under advisement. There are no more cases on the call.